UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| THE HONORABLE ORDER OF | ) | |
| KENTUCKY COLONELS, INC. | ) | |
|    943 South First Street | ) | |
|    Louisville, KY 40203 | ) | |
| | ) | |
|    PLAINTIFF | ) | |
| v. | ) | CIVIL ACTION NO.   <u>3:23CV-43-DJH</u> |
| | ) | |
| GLOBCAL INTERNATIONAL | ) | |
|    302 General Smith Drive | ) | |
|    Richmond, KY 40475 | ) | |
| | ) | |
|    **Serve:  Maya-Lis A. Wright** | ) | |
|         **302 General Smith Drive** | ) | |
|         **Richmond, KY 40475** | ) | |
| | ) | |
| ECOLOGY CROSSROADS | ) | |
| COOPERATIVE FOUNDATION, INC. | ) | |
|    302 General Smith Drive | ) | |
|    Richmond, KY 40475 | ) | |
| | ) | |
|    **Serve:  Maya-Lis A. Wright** | ) | |
|         **302 General Smith Drive** | ) | |
|         **Richmond, KY 40475** | ) | |
| | ) | |
| DAVID J. WRIGHT, Individually and In His | ) | |
| Capacity as President of Ecology Crossroads | ) | |
| Cooperative Foundation, Inc. | ) | |
|      302 General Smith Drive | ) | |
|      Richmond, KY 40475 | ) | |
| | ) | |
| UNKNOWN DEFENDANTS | ) | |
| | ) | |
|    DEFENDANTS | ) | |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff The Honorable Order of Kentucky Colonels, Inc. ("Plaintiff" or "the Honorable

Order"), by counsel, for its Complaint against Defendants Globcal International ("Globcal"),

Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads"), David J. Wright,

individually and in his capacity as President of Ecology Crossroads Cooperative Foundation, Inc. ("Wright"), and Unknown Defendants (collectively referred to as "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action for civil contempt of the Agreed Permanent Injunction entered by this Court; for infringement of the Honorable Order's famous, federally registered trademark, KENTUCKY COLONELS, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for trade name infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for cyberpiracy under the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a); and for substantial and related claims under the common law of the Commonwealth of Kentucky, all arising from Defendants' continued unauthorized use of the KENTUCKY COLONELS Mark in connection with marketing, advertising, promotion and solicitations regarding Defendants' alleged services.

2.     The Honorable Order seeks injunctive and monetary relief.

## PARTIES

3.     The Honorable Order is a nonprofit, tax-exempt corporation organized and existing under the laws of the Commonwealth of Kentucky. Its principal place of business is 943 South First Street, Louisville, Kentucky 40203.

4.     According to the records maintained by the Kentucky Secretary of State, Defendant Ecology Crossroads Cooperative Foundation, Inc. ("Ecology Crossroads") is a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 302 General Smith Drive, Richmond, Kentucky, 40475. Its registered agent for service of

process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

5.      According to the records maintained by the Kentucky Secretary of State, Defendant Globcal International ("Globcal") is an assumed name of Defendant Ecology Crossroads with its principal place of business at 302 General Smith Drive, Richmond, Kentucky, 40475. Its registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

6.      Upon information and belief, Defendant David J. Wright is an individual who is a citizen of the Commonwealth of Kentucky. According to the records maintained by the Kentucky Secretary of State, Wright is the President of Defendant Ecology Crossroads, whose registered agent for service of process is Maya-Lis A. Wright, 302 General Smith Drive, Richmond, Kentucky 40475.

7.      Upon information and belief, Unknown Defendants are individual employees, agents, owners, officers, or directors of Defendants Ecology Crossroads or Globcal who have transacted business, engaged in conduct, or otherwise participated in the activities described in this Verified Complaint.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b) insomuch as this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims below occurred in this District and because the intellectual property at issue substantially is located in this District.

10.     This Court has personal jurisdiction over Wright under KRS 454.210, Kentucky's

long-arm statute, because, among other things, he directly and personally engaged in the actions complained of herein within this District, including infringing upon the Honorable Order's trademarks by marketing and promoting services under the marks KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, and KENTUCKY COLONEL COMPANY (collectively, the "Infringing Marks"). In addition, Wright engaged in actions within this District, intended to facilitate or allow the infringement upon the Honorable Order's trademarks described herein by creating and/or operating the entities or organizations described and identified herein, and/or personally directing those Defendants to engage in the conduct described herein.

11.     This Court, and specifically Judge Rebecca Grady Jennings, retained jurisdiction over the parties' previous, and nearly identical case, Civil Action No. 3:20-CV-132-JRW, as necessary to enforce the Agreed Permanent Injunction ("Permanent Injunction"), entered on February 23, 2021, and the terms of the Settlement Agreement entered by the parties for no less than ten (10) years. *See* Agreed Permanent Injunction, attached hereto as Exhibit 1.

## FACTS

### The Honorable Order and its KENTUCKY COLONELS Mark

12.     From its inspired origins in 1931 through the present day, the Honorable Order has existed as a nonpartisan nonprofit organization dedicated to supporting charitable purposes throughout the Commonwealth. Since 1951, the Honorable Order has granted $60 million to more than 1,700 nonprofits. In 2022 alone, the Honorable Order granted $3.1 million to 314 organizations who, together, serve more than 3.9 million people.

13.     The Governor of Kentucky serves as the Commander-in-Chief of the Honorable Order, along with a board of trustees. From the beginning, the Governor's office recognized the Honorable Order's role, making the Honorable Order responsible for adopting insignia, seals, and

other indicia of the honor.

14.     For nearly a century, the Honorable Order has pursued its mission to follow the objectives described by Kentucky Governor Flem D. Sampson in 1931, a significant aspect of which is promoting and protecting the goodwill of the KENTUCKY COLONELS Mark. That Mark plays a critical role in the Honorable Order's fundraising efforts.

15.     The Honorable Order has federal trademark registrations for, and carefully protects and enforces, the KENTUCKY COLONELS Mark. A chart reflecting the numerous federal trademark registrations owned by the Honorable Order incorporating the KENTUCKY COLONELS Mark, as well as the official documentation reflecting those registrations and applications, is attached as Exhibit 2.

16.     The Honorable Order has continuously used the KENTUCKY COLONELS Mark in connection with its philanthropic, membership, and social activities for decades, and, as a result, the KENTUCKY COLONELS Mark carries a positive connotation worldwide.

**Prior Litigation between the Parties**

17.     On February 20, 2020, the Honorable Order filed a verified complaint against Defendants in this Court for infringement of the Honorable Order's federally registered KENTUCKY COLONELS trademark under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1); for trade name infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for cyberpiracy under the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a); and for substantial and related claims under the common law of the Commonwealth of Kentucky, including defamation, trademark infringement, unfair competition, dilution, unjust enrichment, all arising from Defendants' unauthorized use of the KENTUCKY COLONELS Mark in connection with

marketing, advertising, promotion, and solicitations regarding Defendants' alleged services. (the "2020 Complaint").

18.     A true and accurate copy of the 2020 Complaint is attached hereto as Exhibit 3 and the Honorable Order hereby incorporates by reference the factual allegations as set forth in the 2020 Complaint and its exhibits as if fully reinstated herein.

19.     In the 2020 Complaint, the Honorable Order sought redress for a scheme led by Wright, under the guise of Global and a now-defunct assumed named entity of Ecology Crossroads called Kentucky Colonels International, and with the assistance of Unknown Defendants, to solicit individuals who had been commissioned as Kentucky Colonels to participate, for a fee, in Wright's newly formed "registry" or organization operating under the infringing KENTUCKY COLONELS INTERNATIONAL mark.

20.     As part of Wright's scheme to infringe upon and misappropriate the Honorable Order's KENTUCKY COLONELS Mark and the goodwill associated therewith, Wright and the other Defendants used the internet and social media to confuse the public, including individuals commissioned as Kentucky Colonels, and profit from the Honorable Order's KENTUCKY COLONELS Mark.

### Injunction and Settlement

21.     On February 21, 2020, the Honorable Order filed its Motion for Temporary Restraining Order and Preliminary Injunction, seeking to enjoin Defendants from their continued unlawful scheme to infringe upon and misappropriate the Honorable Order's KENTUCKY COLONELS Mark, as outlined in the 2020 Complaint. The Honorable Order filed its Supplement to Plaintiff's Motion for Temporary Restraining Order on February 24, 2020.

22.     A true and accurate copy of the Honorable Order's 2020 Motion for Temporary Restraining Order and Preliminary Injunction, Supplement to Plaintiff's Motion for Temporary

Restraining Order, and supporting exhibits are attached hereto as Exhibit 4 and the Honorable

Order hereby incorporates by reference the factual allegations as set forth in the 2020 Motion for

Temporary Restraining Order and Preliminary Injunction, Supplement to Plaintiff's Motion for

Temporary Restraining Order, and supporting exhibits as if fully reinstated herein.

23.     On August 13, 2020, the Honorable Judge Rebecca Grady Jennings granted the

Honorable Order's Motion for Temporary Restraining Order and Preliminary Injunction. A true

and correct copy of the entered Temporary Restraining Order and Preliminary Injunction is

attached hereto as Exhibit 5 and is incorporated herein by reference.

24.     On or about February 17, 2021, the parties agreed to a Mediator's Proposal,

resolving the issues in dispute in the 2020 Complaint. A true and correct copy of the Mediator's

Proposal is attached hereto as Exhibit 6 and is incorporated herein by reference.

25.     On February 23, 2021, the Honorable Judge Jennings so-ordered the Permanent

Injunction, a true and accurate copy of which is attached hereto as Exhibit 1 and is incorporated

herein by reference.

26.     The Permanent Injunction including the following injunctions:

1.  Defendants and anyone acting on their behalf, including their owners,
    members, officers, agents, contractors, employees, attorneys, and any
    other persons in active concert or participation with Defendants, are
    permanently enjoined and prohibited from using the KENTUCKY
    COLONELS Mark, or any mark that is confusingly similar to the
    KENTUCKY COLONELS Mark, including, but not limited to,
    KENTUCKY COLONELS INTERNATIONAL and KENTUCKY
    COLONEL FOUNDATION, on or in connection with the sale of any
    goods or service including, but not limited to, the solicitation of
    charitable donations and the promotion of charitable and philanthropic
    causes.

2.  Defendants and anyone acting on their behalf, including their owners,
    members, officers, agents, contractors, employees, attorneys, and any
    other person in active concert or participation with Defendants, are
    permanently enjoined and prohibited from using the KENTUCKY
    COLONELS Mark, or any mark that is confusingly similar to the

KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONELS FOUNDATION, on any website, social media page, or blog in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants or any organization or cause sponsored or supported by Defendants.

3. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, are permanently enjoined and prohibited from using the domain names [kycolonels.international], [kentucky.colonels.net], or any other domain name that is confusingly similar to [kycolonels.org], or *any domain name* that incorporates the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION.

4. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other persons in active concert or participation with Defendants, are permanently enjoined and prohibited from using Facebook or any other social media platform usernames "Kentucky Colonels International" or "Kentucky Colonel Foundation" or any other username or handle that is confusingly similar to the trademark KENTUCKY COLONELS for the purposes of forming a membership organization, a civil society association or other non-commercial activity such as an event or charitable fundraising endeavor.

*Id.*

27. The Permanent Injunction also made clear that Wright and other Kentucky Colonels, as individuals, could use "Kentucky Colonel" or "Kentucky colonels," and/or "Kentucky colonelcy" "as words or terms to describe Kentucky colonels, as an honorary title, or for editorial, education, informative, journalistic, literary, or other non-commercial purposes so long as the use is not related to the trademark or service mark uses registered, or pending, by the HOKC with the U.S. Patent and Trademark Office." *Id.* at ¶ 5.

28. Although the Permanent Injunction disposed of all claims of the 2020 Complaint,

the Court, and specifically the Honorable Judge Jennings, retained jurisdiction over the matter as necessary to enforce the Permanent Injunction and the terms of the Settlement Agreement for no less than ten (10) years. *Id.* at ¶ 6.

**Defendants Continue to Violate the Terms of the Permanent Injunction and Act Unlawfully**

29.     Despite the Permanent Injunction, Wright, either alone or with the assistance of others, including those involved with Defendants, has created, maintained, moderated and/or is involved with various infringing online activities in clear violation of the Permanent Injunction, including the [kycolonelcy.us] domain name; the KENTUCKY COLONEL COMMUNITY Facebook group; the KENTUCKY COLONEL CLUB Facebook group; the KENTUCKY COLONEL Facebook page; the KENTUCKY COLONEL YouTube page using the @Kentucky-Colonel handle; the KENTUCKY COLONEL Twitter account using the @KyColonelcy handle; the KENTUCKY COLONEL LinkedIn page; the KENTUCKY COLONEL Pinterest account with the @kycolonelcy.us handle; and the KENTUCKY COLONEL COMPANY Crunchbase account.

30.     The KENTUCKY COLONEL LinkedIn page states "Protecting the Honorable Title Mark and Office of the Kentucky Colonelcy in Old Kentucky, when the Colonels were Kings." The most recent post from January 13, 2023, states "We have talked long enough and planned around the laws we established for the Kentucky Colonel in 2021. It is time to take action, our attorneys have given us a green light to start a collective licensing programs for the Common-Law Title Mark through our sponsors which are all colonels. If you are a colonel 21 year of age or older, join us!" and includes a photograph of Governor Andy Beshear awarding a commission of Kentucky Colonel upon a recipient. A screenshot of the KENTUCKY COLONEL LinkedIn page, taken on January 24, 2023, is attached hereto as Exhibit 7.

31.     The KENTUCKY COLONEL COMMUNITY Facebook group "About this group" states that "The Kentucky Colonel Community is the 'First' and 'Official' Commonwealth of

Case 3:23-cv-00043-RGJ   Document 1   Filed 01/25/23   Page 10 of 41 PageID #: 10

Kentucky Facebook Group organized independently by Kentucky colonels living around the world connected via Facebook. . . . Kentucky Colonel Badges, ID Cards and Nameplates are only issued to official cooperative employees and sponsors with access to our Internet publishing platform, on January 1, 2023 the cards will become available to all cooperative capital investors and network platform users that support the cooperative as partial owners. . . . Our online group here on Facebook is a grassroots manifestation within the social media of independent Kentucky colonels to establish a cooperative company and social enterprise." A screenshot of the KENTUCKY COLONEL COMMUNITY Facebook group "About this group" page, taken on January 24, 2023, is attached hereto as Exhibit 8.

32.     The KENTUCKY COLONEL CLUB Facebook group "About this group" states that "The Kentucky Colonel Club is an official online social media group of commissioned Kentucky colonels living around the world that are connected on Facebook. The 1st Kentucky Colonel Club was established in 1902, this club was developed to carry on that legacy. . . . The group discussion here centers around Old Kentucky History, customs and traditions of the First Kentucky Colonels, using the commission to exercise the rights, privileges, and responsibilities while treating the certificate as a vehicle to personal success through the office of lifetime achievement award and the honorable title." A screenshot of the KENTUCKY COLONEL CLUB Facebook group "About this group" page, taken on January 24, 2023, is attached hereto as Exhibit 9.

33.     The KENTUCKY COLONEL Facebook page includes multiple posts about persons being commissioned as Kentucky Colonels, tagging itself—the KENTUCKY COLONEL Facebook page—within the posts.



34.     On or about December 12, 2022, the Honorable Order was made aware of a post on the KENTUCKY COLONEL Facebook page regarding photo ID cards and "additional exclusive benefits" for "The Kentucky Colonel (1775) Company & Cooperative." The post has since been deleted, but a screenshot appears below:



35.     Notably, on or around May 4, 2022, the KENTUCKY COLONEL Facebook page

had a post offering to sell the "trademark KENTUCKY COLONEL website (w/ 4 domains)." A

true and correct screenshot of the post, taken on May 4, 2020, is included herein:



36.     In an effort to resolve the continued issues, on May 16, 2022, the Honorable Order, via counsel, sent a detailed letter to Wright demanding that he "cease and desist from [his] unlawful activities in violation of the Court's [Permanent] Inunction and [the Honorable Order's] intellectual property rights." A true and correct copy of the cease and desist letter is attached as Exhibit 10.

37.     Wright responded on May 23, 2022, denying that his or anyone else's actions violated the Permanent Injunction by "offering my 'trademark Kentucky Colonel [cy] website' on Facebook to other Kentucky colonels **in a 'private community' that is not affiliated, associated, created, endorsed or sponsored by the [Honorable Order]** . . ."; that Wright "understand[s] the Preliminary Injunction [*sic*] was created as a solution to protect [the Honorable Order's]

wordmarks [**KENTUCKY COLONELS**] and [**KYCOLONELS**] from confusion or damage during the trial and as implied trade names based on the [**KENTUCKY COLONELS ®**] Mark. Without the letter '**S**' or the ® does not your registered trademark make . . . ."; that "KENTUCKY COLONEL $^{TM}$ is definitely not [the Honorable Order's] trademark, nor is it a registerable mark . . . ."; and that "The America Colonels Network, Office of Civilian Colonels, and our Kentucky Colonelcy website (and social media accounts) are not responsible for comments or statements made by third parties or other Kentucky colonels that have been granted the Honorable title: **Kentucky Colonel**. . . ." A true and correct copy of the response letter is attached as Exhibit 11.

38.     Upon information and belief, Defendants created or organized a page on the crowdfunding website crunchbase.com for "Kentucky Colonel $^{TM}$" located at https://www.crunchbase.com/organization/kentucky-colonel-1775. According to the page, "Kentucky Colonel $^{TM}$" has a "Total Funding Amount" of "$7.5K." The page further states that it is a sub-organization of Globcal International, that founders include David Wright and Godfrey Brock-Gadd, and that its website is "www.kycolonelcy.us." A screenshot from the crunchbase page, taken on January 24, 2023, is attached as Exhibit 12.

39.     The Kentucky Colonel: Honorable Title and Official website, located at www.kycolonelcy.us (the "Website"), "About Us" page states that "The Kentucky Colonelcy (website) is a publication of a cooperative civil rights interest group made up of Kentucky colonels promoting and supporting colonels as goodwill ambassadors for the Commonwealth at home and abroad." The page also discusses the "International Registry of Kentucky Colonels," specifically stating that "The registry will offer colonels a **certificate of registration, a lifetime ID card** and additional **Internet services**." A screenshot of this page, taken on January 25, 2023, is attached as Exhibit 13.

40.     The Website's "Contact Us" page identifies Wright as "Charge d'Affaires"; Col.

14

Godfrey Brock-Gadd as Patron; Col. Luis Cruz Diaz as Secretary; Col. Nicholas A. Wright as Treasurer; and Col. Maria Veneke-Ylikomi as Registrar.

41.     The Website has a page titled "Kentucky Colonel Cooperative" located at https://www.kycolonelcy.us/kentucky-colonel-cooperative. This page includes a section titled "Identification Cards, Badges and Nameplates" and states that "Kentucky Colonel Badges and Kentucky Colonel Nameplates will not be available until June of 2023." The page further states that "To obtain an ID card a member needs to be enrolled and paying dues in the cooperative for a minimum of 30 days with a a [*sic*] $100 or greater investment after signing the cooperative agreement and elaborating a work profile. . . . Kentucky Colonel Cooperative is not our name, but it is a term that describes ethically **what we are officially forming in 2023!** The cooperative service organization in formation will be empowered with the same legal 'rights, privileges and responsibilities' of the Kentucky Colonel under the same unwritten honorable code of ethics and moral obligations as the **First Pioneer Colonels of Old Kentucky** (descriptive origin) from 1775 – 1792 also known as "Old Kentucky." The page includes the following image of an identification card or badge:



A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 14.

42.    The "Kentucky Colonel Cooperative" page also includes the image of a PDF entitled "News for Immediate Release" from the "Office of the Kentucky Colonelcy." A copy of the PDF is attached as Exhibit 15. Next to the image of the PDF is a statement that reads "The Office of the Kentucky Colonel is not a physical office that you can visit, it refers to the duties and responsibilities of a Kentucky Colonel that has taken an oath to serve the Commonwealth of Kentucky as a colonel professionally among other colonels. The Governor provides the opportunity through the commission. The first paragraph of the PDF states "The world's greatest state officials and most popular goodwill ambassadors are getting their jobs back with the professional occupational title: **Kentucky Colonel** by making the Honorable Title more appealing, legal, official, recognized and better understood that it has ever been . . . ." The second paragraph goes on to state that "The cooperative social enterprise based in Richmond, Kentucky is a

decentralized remotely collaborated Internet publishing company focused on the progressive development of Creative Commons content from the public domain . . . . As a cooperative social enterprise they will issue official ID cards, badges and nameplates; the cooperative colonels will be connected to a virtual workplace, have company email, and be required to collaborate online or in the community for 50 hours per year." The third paragraph states that "The organizer, Col. David Wright, . . . said 'Since we won the lawsuit filed by the Honorable Order of Kentucky Colonels in 2020, we have completely debunked their fictional militia myth of 1813 with the Secretary of State . . . ." The final paragraph of the PDF states that "The sponsor of the decentralized cooperative development, responsible for technological developments using ICT and the Internet is **Ecology Crossroads Cooperative Foundation**, established in 1994 with its registered office in Richmond, Kentucky. The nonprofit was merged in 2020 with Global International which previously sponsored the society for its Kentucky colonels (2008-2020) and others that have gathered as followers online."

43.     The Website includes a page titled "Kentucky Colonel Directory" located at https://www.kycolonelcy.us/directory. This page states that "This electronic directory of Kentucky colonels is a special free service provided by this WebSite in cooperation with our sister company '**Honorificus**' which is part of Globcal International which is decentralized at the Birthplace of the Kentucky Colonel in Madison County near Boonesborough; only persons that are legally registered to work with the **Office of the Civilian Colonelcy** using the **Title: Kentucky Colonel internationally,** or are Kentucky residents that use the **Honorable Title: Kentucky Colonel, Col. or Colonel** in association with Kentucky . . . as individual public figures, community leaders, attorneys, journalists, bloggers, celebrities and business owners or anyone who may have been issued a **Kentucky Colonel License** ᵀᴹ or requested a **Kentucky Colonel** ᵀᴹ **ID Card** or **Goodwill Ambassador** ᵀᴹ **ID Card** (Official Identification Cards). This is a planned objective to

enhance the perspective and scope of Kentucky Colonelcy, the Honorable Title, the modern duties of the office and its importance as the origin and source of democratic civilian government, idealism and society throughout America." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 16.

44.     The Website includes a page titled "Kentucky Colonel Branches" located at https://www.kycolonelcy.us/branches. This page states that "Any cooperative colonel can create a **new branch** simply by organizing a location or a meeting with two additional colonels." The website further states "Page Coming Soon in 2023!" A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 17.

45.     The Website includes a page titled "Kentucky Colonel Guide (Professional)" located at https://www.kycolonelcy.us/guide. The page includes a section on "Kentucky Colonel Apparel," which states "Find out where to buy official and unofficial merchandise from third-parties recommended to impress your friends with your Kentucky colonelcy . . . . Manufacturers and suppliers of hats, string ties, jackets, sunglasses, uniforms, insignia, badges, and other items will be discussed, send your links to us at: webmaster@colonels.net; our ideal is to connect you with suppliers that support our open-source platform and creative work." This section also states "Also see product reviews for merchandise from the Kentucky Colonels Shop produced by the Honorable Order of Kentucky Colonels in our blog" and includes a link to the Honorable Order's online store. The "Kentucky Colonel Guide" page also includes sections titled "Get Involved" and "More To Do" with suggestions on promoting the Commonwealth and doing a community project. A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 18.

46.     The Website includes a page titled "Kentucky Colonel Identification (Photo ID Cards)" located at https://www.kycolonelcy.us/kentucky-colonel-id-card. The page states that "Only a commissioned Kentucky Colonel can obtain a card by joining our groups on Facebook or

LinkedIn and invest in our platform as a cooperative owner." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 19.

47.     The Website includes a page titled "Kentucky Colonel Business Cards" located at https://www.kycolonelcy.us/kentucky-colonel-business-card. The page states "The Office of the Colonelcy recommends that Kentucky colonels make their own business, Internet and personal presentation cards based on our official guidelines." The page further states to "Check back in 2023 when we add some standard models that can be produced by a number of printers." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 20.

48.     The Website includes a page titled "List of Kentucky Colonels" located at https://www.kycolonelcy.us/list-of-kentucky-colonels. The page includes directions on how to "add your name to our list," which includes the person sending a photograph of themselves holding their commission, along with their full name on the commission, the date they were commissioned, and the name of the governor who commissioned them to the email address "kycolonelcy@gmail.com." The page goes on to state that "A form will be developed for this in the future, but for now it is just old-fashioned email. Other links can be included in your email our webmaster will connect them to your profile record which is automatically created when your email is received." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 21.

49.     The Website includes a page titled "Kentucky Colonel Registry" located at https://www.kycolonelcy.us/kentucky-colonel-registry. The page states that "Those who have received a colonel's commission may apply to be recognized in an **international title registry** . . . . The combined program is scheduled to be online by early 2023 coincident with our reformation as the Transylvania Company (the source of Kentucky Colonelcy). The **Title Registry** will be operated by the **Honorificus Foundation**, a non-state, non-political and non-governmental organization established offshore to maintain international neutrality. The registry will maintain a

database of notarized titles, original certificate photos, apostilled certifications, personal data, genealogical links, provide a username, and a membership card to registrants . . . . Registration is perhaps more difficult than becoming a Kentucky Colonel in the first place, but we believe it is a valuable tool and will provide colonels with a point of reference based on their claim to hold the Honorable Title. All titles require registration before they can be verified." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 22.

50.     The Website includes a page titled "Kentucky Colonel Club," located at https://www.kycolonelcy.us/kentucky-colonel-club, which states that "Any three duly recognized persons with a Kentucky Colonel Commission can start a Kentucky Colonel Association, Club or Society to perform local activities or civil functions with all the rights, privileges and responsibilities of a Kentucky Colonel. The association, club and society structural styles are preferred among other designations." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 23.

51.     The Website "Disclaimer Policy," located at https://www.kycolonelcy.us/policies/disclaimer, states that "We are a [*sic*] authorship and publishing group that provides educational information to the public, historical documentation, information compiled from the public domain and mutual benefit services to our users who are Kentucky colonels that choose to join us as authors or website developers." A screenshot of this page, taken on January 24, 2023, is attached as Exhibit 24.

52.     On January 12, 2023, counsel for the Honorable Order advised Wright that his actions, and the actions of the other Defendants, were in direct violation of the Permanent Injunction, specifically through using the Infringing Marks on the Website and various social media pages; using the Infringing Marks in the formation of an organization with a registry, business cards, photo ID cards, and badges; and use of the Infringing Marks in the solicitation of

donations, all in a manner likely to cause—and in fact actually causing—consumer confusion.

53.    On January 12, 2023, subsequent to the telephone call with counsel for the Honorable Order, Wright wrote on the private KENTUCKY COLONEL COMMUNITY Facebook group that "We [Defendants] represent **KENTUCKY COLONEL ™** which is the legal representative unregistered common-law designation for one or more **Real Colonels**. . . . The [Honorable Order] in law must use **KENTUCKY COLONELS®** as the mark is registered with the USPTO for arbitrary use to stop confusing colonels with products and things that are not real Kentucky colonels . . . ." The full post from the private KENTUCKY COLONEL COMMUNITY Facebook group states:





54.    On January 22, 2023, "Kentucky Colonel" posted on the private KENTUCKY

COLONEL CLUB Facebook group that "The Kentucky Colonel ID is a special group (cooperative

body) that is looking to establish a multifunctional online identification product for the Kentucky

Colonel (each of us) that can be used for identification to exercise your 'rights, privileges and

responsibilities' under the 'Kentucky Colonel Guide' which will be a 33 page written standard

handbook." The post goes on to state that "It is now the responsibility of the Kentucky Colonel <sup>TM</sup>

Group and its members to reach 100 members prior to printing ID cards" and that "*we* are looking

to *merge* our objective with the Goodwill Ambassador <sup>TM</sup> Title *to better protect the Kentucky*

*Colonel Commission and Title*" (emphasis added). Further, "The members of the new group are

now the legally obliged cooperatively invested independently owners of the Kentucky Colonelcy

website as an asset which was speculatively valued at $1,000,000 in November . . . . We offered

1,000 shares of the asset for $1,000 each based on donating to the educational, information, legal

and semantic protection of the posterity of the Honorable Title(s)." The post continues: "This

group will be charged with the keeping of the Honorable Title Registry which must involve a third-party offshore . . . members are issued IDaaS credentials using Premium Hosted Services like those offered by [colonels.net]." Finally, "joining us as a professional to get an ID Card or badge is now 'optional' not required, but using the screening form is essential. The members of the Kentucky Colonel ID Group will be invested in the Registry's integrity, so it is up to them to get to 100 members first meanwhile we are working on the registry perhaps 500 colonels there will be as good as 100 colonels in the group?" The full post from the private KENTUCKY COLONEL CLUB Facebook group states:







**INVESTMENT OPPORTUNITY**

The members of the new group are now the legally obliged cooperatively invested independently owners of the Kentucky Coloneley website as an asset which was speculatively estimated to be valued at $1,000,000 in November is consistent based on its current traffic reports and underdeveloped content as a Creative Commons information source. We offered 1,000 shares of the asset for $1,000 each based on donating to the educational, informational, legal and semantic protection of the posterity of the **Honorable Title(s).**

**"Hon.", "Honorable", and "Colonel"**



**"Hon.", "Honorable", and "Colonel"** as a pronominals and "Kentucky Colonel", "Commonwealth Ambassador", "Kentucky Admiral" and other recognized American US and Commonwealth Nations UK Titles as **HONORIFIC** through a title verification service for diplomatic credence. (It is the only way to authenticate your **"rights, privileges and responsibilities"** is to know what they are, understand them and assert them.)

The group will be charged with the keeping of the Honorable Title Registry which must involve a third-party offshore [Ex-Officio Registrar] that is a non-state actor using a cloud hosted network, members are issued IDaaS credentials using



issued IDaaS credentials using Premium Hosted services like those offered by [colonels.net].

Currently the **Colonels Network** receives a great deal of traffic also 50% of whom visit the **Office of the Kentucky Coloneley** website.

> New ID Card (Kentucky Colonel Credential Requirements)

Thanks to the forward thinking of colonels with legal experience **"There should be a legal offshore registration procedure and verification process, but no colonel should be required to become a member of anything in order to get an Official ID Card".** So joining us as a professional to get an ID Card or ~~badge is now 'optional' not required~~

a professional to get an ID Card or badge is now 'optional' not required, but using the screening form is essential. The members of the **Kentucky Colonel**  **Group** will be invested in the Registry's integrity, so it is up to them to get to 100 members first meanwhile we are working on the registry perhaps 500 colonels there will be as good as 100 colonels in the group?

It is all of our objectives to amplify and project the use of the term **Kentucky Colonel** as a Proper Title (noun) in singular form with the authority by which it was granted, that is a good start in exercising your rights and privileges which provoke responsibilities; once you understand coloneley you will

It is all of our objectives to amplify and project the use of the term **Kentucky Colonel** as a Proper Title (noun) in singular form with the authority by which it was granted, that is a good start in exercising your rights and privileges which provoke responsibilities; once you understand coloneley you will understand more!

👍 27                    2 comments

👍 Like      💬 Comment      ➢ Send

55.     The Honorable Order has experienced actual confusion as a result of Defendants'

activities using the Infringing Marks. For example, four separate Kentucky Colonels contacted the

Honorable Order in December 2022 regarding the validity of the KENTUCKY COLONEL

Facebook page offering "Kentucky Colonel Photo ID Cards." One Kentucky Colonel contacted

the Honorable Order on December 30, 2022 with concerns over Defendants' creation of badges.

Another Kentucky Colonel contacted the Honorable Order on January 13, 2023 regarding

obtaining a badge similar to those discussed on the Website and Defendants' various social media

pages. Two Kentucky Colonels have contacted the Honorable Order regarding confusion as to the

KENTUCKY COLONEL COMMUNITY Facebook group, the KENTUCKY COLONEL CLUB

Facebook group, and the KENTUCKY COLONEL Facebook page, believing the accounts to be

run by the Honorable Order. One of those Kentucky Colonels was particularly confused by a post

in the KENTUCKY COLONEL COMMUNITY Facebook group regarding "No More Confusion

in the 'Kentucky Colonel Community'" understanding the post to mean that the Honorable Order

of Kentucky Colonels was restarting. The Kentucky Colonel was also confused as to why he was

being ask to contribute financially again.

56.     Wright and the other Defendants are using the internet and social media to confuse

the public, misappropriate the goodwill of the KENTUCKY COLONELS Mark, and profit from

the KENTUCKY COLONELS Mark. Unless they are ordered, once again, to cease and desist their

improper and unauthorized use of the KENTUCKY COLONELS Mark, Defendants will continue

their infringing activity, which is also in violation of the Permanent Injunction, thereby damaging

the goodwill and reputation that the Honorable Order has built over decades.

57.     Upon information and belief, the Unknown Defendants have aided, abetted, and/or

participated in the conduct and activities described above. Those individuals and entities, through

their affiliation with and support of Wright, Globcal, and/or Ecology Crossroads, have irreparably

harmed and damaged the Honorable Order through their facilitation of and assistance with the enjoined, unauthorized, and improper use of the KENTUCKY COLONELS Mark described above.

58.     Each of the foregoing acts, as described in this Verified Complaint, represent a clear breach of the definite and specific prohibitions of the Permanent Injunction, for which Defendants were aware of and reminded of on more than one occasion, and for which sanctions against Defendants are appropriate.

## COUNT ONE
## Civil Contempt

59.     Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated in this Count by reference.

60.     The mandates of the Permanent Injunction are definite, specific, and void of any ambiguities as to what is expected of Defendants in order to comply.

61.     Defendants knew about the Permanent Injunction and the prohibitions therein, as the Permanent Injunction was created as part of settlement discussions in which the parties collaborated and agreed upon the terms that were then submitted to, and entered by, the Court.

62.     Wright was further advised that his actions, and the actions of the other Defendants, were in violation of the Permanent Injunction in the May 16, 2022 cease and desist letter and the January 12, 2023 phone call with counsel for the Honorable Order.

63.     Defendants, through the above-described actions, have knowingly violated the specific and definite terms of the Permanent Injunction by infringing the Honorable Order's KENTUCKY COLONELS Mark on or in connection with the sale of goods or services including, but not limited to, the solicitation of charitable donations and the promotion of charitable and philanthropic causes; by infringing the Honorable Order's KENTUCKY COLONELS Mark on

any website, social media page, or blog in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that [the Honorable Order] has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants or any organization or cause sponsored or supported by Defendants; by using the domain names [kycolonelcy.us] and [colonels.net]; and by using Facebook or any other social media platform usernames "Kentucky Colonel Community," "Kentucky Colonel Club," "Kentucky Colonel," and "Kentucky Colonel Company" for the purposes of forming a membership organization, a civil society association or other non-commercial activity such as an event or charitable fundraising endeavor.

64.      Upon information and belief, Defendants' violations of the Permanent Injunction have led to, and will continue to lead to, profits and gains to which Defendants are not entitled in equity or law.

65.      Defendants' violations of the Permanent Injunction have caused and will continue to cause immediate irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless the Permanent Injunction is enforced. The Honorable Order has no adequate remedy at law.

**COUNT TWO**
**Federal Trademark Infringement**

66.      Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated in this Count by reference.

67.      Defendants' continued unauthorized use in commerce of the Infringing Marks as alleged herein, and in violation of the Permanent Injunction, is likely to deceive, and already has deceived, consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, and already has caused consumers to believe, contrary to fact, that Defendants' services are offered, authorized, endorsed, or sponsored by the Honorable

Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

68.     Upon information and belief, and in violation of the Permanent Injunction, Defendants have committed the foregoing acts of infringement with full knowledge of the Honorable Order's prior rights in the KENTUCKY COLONELS Mark and with the willful intent to cause confusion and trade on the Honorable Order's goodwill.

69.     Upon information and belief, and in violation of the Permanent Injunction, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

70.     Not only is Defendants' conduct as alleged herein in violation of the Permanent Injunction, but it is also causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT THREE
## Federal Trade Name Infringement

71.     Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated into this Count.

72.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive, and already has deceived, consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause, and already has caused, consumers to believe, contrary to fact, that Defendants' services are authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored

by the Honorable Order. Defendants' conduct therefore constitutes trade name infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.     Upon information and belief, and in violation of the Permanent Injunction, Defendants have committed the foregoing acts of infringement with full knowledge of the Honorable Order's prior rights in the KENTUCKY COLONELS Mark and with the willful intent to cause confusion and trade on the Honorable Order's goodwill.

74.     Upon information and belief, and in violation of the Permanent Injunction, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

75.     Not only is Defendants' conduct as alleged herein in violation of the Permanent Injunction, but it is also causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

### COUNT FOUR
### Federal Unfair Competition and False Designation of Origin

76.     Each of the foregoing Paragraphs of this Verified Complaint is hereby incorporated into this Count.

77.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive, and already has deceived, consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause, and already has caused, consumers to believe, contrary to fact, that Defendants' services are authorized, endorsed, or sponsored by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order.

78.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

79.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to, is likely to, and already has caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Honorable Order.

80.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.     Not only is Defendants' conduct as alleged herein in violation of the Permanent Injunction, but it is also causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT FIVE
## Federal Trademark Dilution

82.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

83.     The KENTUCKY COLONELS Mark is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

84.     The KENTUCKY COLONELS Mark became distinctive and famous prior to Defendants' acts as alleged herein.

85.     Defendants' acts as alleged herein have diluted by blurring and will, unless enjoined, continue to dilute by blurring, and are likely to dilute by blurring, the distinctive quality of the Honorable Order's famous KENTUCKY COLONELS Mark.

86.     Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish, the Honorable Order's KENTUCKY COLONELS Mark by undermining and damaging the valuable goodwill associated therewith.

87.     Defendants' conduct as alleged herein constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

88.     Defendants' conduct as alleged herein is not only a violation of the Permanent Injunction, but also is intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and has already caused the Honorable Order irreparable damage and will continue to so damage the Honorable Order unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

### COUNT SIX
### Anticybersquatting Consumer Protection Act

89.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

90.     The KENTUCKY COLONELS Mark is a distinctive and famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

91.     According to publicly available WhoIs Data, on September 29, 2000 the Honorable Order registered the domain name www.kycolonels.org, which it continues to use today. A copy of the relevant WhoIs Data is attached hereto as Exhibit 25.

92.     According to publicly available WhoIs Data, on January 30, 2021 the domain name www.kycolonelcy.us registered. The WhoIs Data lists Wright as the registrant contact, administrative contact, and technical contact for the domain name, which Defendants now use. A copy of the relevant WhoIs Data is attached hereto as Exhibit 26.

93.     Defendants' domain name incorporates the KENTUCKY COLONELS Mark and

is identical or confusingly similar to the Honorable Order's domain name, or dilutive of the famous KENTUCKY COLONELS Mark.

94.     Defendants registered, and continue to use, the www.kycolonelcy.us domain name with a bad faith intent to profit from the KENTUCKY COLONELS Mark.

95.     Defendants' conduct as alleged herein constitutes cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a).

96.     Defendants' conduct as alleged herein is not only in violation of the Permanent Injunction, but is also causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

**COUNT SEVEN**
**Common Law Trademark Infringement and Unfair Competition**

97.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

98.     The KENTUCKY COLONELS Mark is valid and protectable.

99.     Defendants' use of the Infringing Marks is likely to cause confusion about the source or origin of the services in violation of the common law of the Commonwealth of Kentucky, in that such use of the Infringing Marks is likely to impair the goodwill of the Honorable Order's KENTUCKY COLONELS Mark and allow Defendants to unfairly profit from the use of a confusingly similar mark.

100.    Defendants' use of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored

by the Honorable Order, or that Defendants are in some way affiliated with or sponsored by the Honorable Order when in fact Defendants have no connection or affiliation with the Honorable Order.

101.   Defendants, through their use of the Infringing Marks, have engaged in misrepresentation, unfairly competing with the Honorable Order in violation of Kentucky common law as well as the Permanent Injunction.

102.   Defendants' actions constitute trademark infringement and unfair competition in violation of the common law of the Commonwealth of Kentucky as well as the Permanent Injunction.

103.   Upon information and belief, and in violation of the Permanent Injunction, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

104.   Defendants' conduct as alleged herein is not only in violation of the Permanent Injunction, but also is causing immediate and irreparable harm and injury to the Honorable Order, and to its goodwill and reputation, and will continue to both damage the Honorable Order and confuse the public unless enjoined by this Court. The Honorable Order has no adequate remedy at law.

## COUNT EIGHT
## Common Law Dilution

105.   Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

106.   The KENTUCKY COLONELS Mark is well known.

107.   Defendants' use of the Infringing Marks is likely to confuse, and has actually confused, consumers as to the source or sponsorship of Defendants' services, and is in violation

of the Permanent Injunction.

108.    Defendants' use of the Infringing Marks is causing harm and will, unless enjoined, continue to cause harm to the reputation and goodwill of the KENTUCKY COLONELS Mark.

### COUNT NINE
### Unjust Enrichment

109.    Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

110.    Defendants are unlawfully using the Infringing Marks to their benefit at the expense of the Honorable Order.

111.    Defendants, through their unlawful use of the Infringing Marks, and in violation of the Permanent Injunction, are soliciting and collecting donations from members of the public who believe they are donating to the Honorable Order.

112.    It would be unjust, and in violation of the Permanent Injunction, for Defendants to retain the donations they have received based on their unlawful use of the Infringing Marks.

### PRAYER FOR RELIEF

**WHEREFORE**, The Honorable Order of Kentucky Colonels prays for and requests as follows:

A.  Judgment in favor of the Honorable Order on all of its claims;

B.  Judgment holding Defendants in civil contempt for violation of the Permanent Injunction;

C.  Judgment holding that Defendants violated Section 32 of the Lanham Act (15 U.S.C. § 1114(1)), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and Section 43(d) of the Lanham Act, (15 U.S.C. § 1125(a));

D.  Judgment holding that Defendants violated the common law of the Commonwealth of Kentucky;

E.  Judgment granting further preliminary and permanent injunctive relief enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of this Court's order by personal service or otherwise from:

> i.  selling, marketing, advertising, promoting, or authorizing any third party to sell, market, advertise or promote goods or services bearing the KENTUCKY COLONELS Mark, the KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, or KENTUCKY COLONEL COMPANY marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the KENTUCKY COLONELS Mark;
>
> ii.  engaging in any activity that infringes the Honorable Order's rights in its KENTUCKY COLONELS Mark;
>
> iii.  engaging in any activity that infringes the Honorable Order's trade name;
>
> iv.  engaging in any activity constituting unfair competition with the Honorable Order;
>
> v.  engaging in any activity that is likely to dilute, by tarnishing or blurring, the famousness of the Honorable Order's KENTUCKY COLONELS Mark;
>
> vi.  using or registering any domain name incorporating the KENTUCKY COLONELS Mark, the KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, or KENTUCKY

COLONEL COMPANY marks, or any other mark that infringes or is likely to be confused with the Honorable Order's KENTUCKY COLONELS Mark;

vii.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with the Honorable Order or (ii) the Honorable Order's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

viii.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with the Honorable Order or tend to do so;

ix.   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the KENTUCKY COLONELS Mark, the KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, or KENTUCKY COLONEL COMPANY marks, or any other mark that infringes or is likely to be confused with the Honorable Order's KENTUCKY COLONELS Mark, or any goods or services of the Honorable Order, or the Honorable Order as their source; and

x.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (ix).

F.  Judgment granting such other and further relief as this Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with the Honorable Order, or constitute or are connected with the Honorable Order's goods and services;

G.  Judgment directing Defendants to immediately cease all display, marketing, advertising, promotion, sale, solicitation, and/or use of anything that features or bears any designation or mark incorporating the KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, or KENTUCKY COLONEL COMPANY marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Honorable Order's KENTUCKY COLONELS Mark, and to direct all third parties or individuals wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods or services, featuring or bearing the KENTUCKY COLONEL, KENTUCKY COLONEL CLUB, KENTUCKY COLONELCY, or KENTUCKY COLONEL COMPANY marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Honorable Order's KENTUCKY COLONELS Mark, and to immediately remove them from

public access and view, unless such use is by a Kentucky Colonel, as an individual, using "Kentucky Colonel," "Kentucky colonels," and/or "Kentucky colonelcy" as words or terms to describe Kentucky colonels, as an honorary title, or for editorial, educational, informative, journalistic, literary, or other non-commercial purposes so long as the use is not related to the trademark or service mark uses registered by the Honorable Order with the United States Patent and Trademark Office;

H. Judgment directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with this Court and serve upon the Honorable Order's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as this Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

I. Judgment awarding the Honorable Order all monetary remedies to which it is entitled, including any damages (trebled) sustained by the Honorable Order in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) and common law;

J. Judgment awarding the Honorable Order all monetary remedies to which it is entitled, including disgorgement of Defendants' profits in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) and violation of common law;

K. Judgment awarding the Honorable Order punitive and exemplary damages as this Court finds appropriate to deter any future willful infringement;

L. Judgment declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), and awarding the Honorable Order its costs and reasonable attorneys' fees thereunder;

M.  Judgment awarding the Honorable Order interest, including prejudgment and post-judgement interest, on the foregoing sums; and

N.  Such other and further relief as this Court deems just and proper.

## VERIFICATION

The undersigned hereby swears and affirms that she is currently the Executive Director of the Honorable Order of Kentucky Colonels, Inc., that she is authorized to sign this Verified Complaint and that the statements made herein are true and correct to the best of her knowledge.

_____
Sherry Crose

COMMONWEALTH OF KENTUCKY  )
                           )  :SS
COUNTY OF JEFFERSON        )

The foregoing instrument was acknowledged before me this 25 day of January, 2923, by Sherry Crose.

My commission expires: 11-22-26                    .

_____ #61790
Notary Public

Respectfully submitted,

/s/ Cornelius E. Coryell II
Cornelius E. Coryell II
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
(502) 589-5235
ccoryell@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff, Honorable Order of Kentucky Colonels*

101031728.3